**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Newport News Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 4:22cr17 |
| | ) | |
| **ROBIN HOOPER** | ) | |
| | ) | |
| Defendant. | ) | |

## POSITION OF DEFENDANT ROBIN HOOPER WITH RESPECT TO SENTENCING FACTORS

COMES NOW the Defendant, Robin Hooper, by counsel, and states as follows for her position on sentencing:

Ms. Robin Hooper and counsel have reviewed the pre-sentence investigation report and have no unresolved objections. Ms. Hooper contends that the § 3553(a) factors support a sentence of 3 years of probation rather than imprisonment. *See* 18 U.S.C. § 3553 (a). Alternatively, should this Court determine the factors support custodial time, Ms. Hooper respectfully states that a sentence of 12 months to be served on home confinement, plus 3 years of supervised release, sufficiently accomplishes the purposes set forth in paragraph (2) of § 3552(a).

### Defense Evidence to be Presented at the Sentencing Hearing

Defendant Robin Hooper will present the following evidence at her sentencing hearing:

1

**Witness Testimony**

1. Ms. Hooper's contrition testimony illustrating her acceptance of responsibility and her regret for the harm she has caused; her accomplished professional history and continued employment in the technology field; her traumatic experiences with William Hooper, both while married and also after Mr. Hooper was ultimately arrested and convicted on federal charges related to child pornography; her regret at what happened in her relationship with Patricia Gyetvay and her efforts to provide her full restitution; her family tragedy including her brother's recent hospitalization and the vital role she plays in his care; and finally, her plan to provide full restitution to the federal government as well as the steps she is taking to preserve the investments of those who provided funds to Williams Wharf Oyster Company.

   a. Ms. Hooper will also introduce a certified copy of the satisfaction of judgment in Ms. Gyetvay's civil matter as well as proof of payment towards the full amount owed to the IRS.

2. Dee Russell, will testify regarding her observation and support of Robin Hooper's emotional progress from William Hooper's arrest to the present as well as her intention and ability to provide support to Robin moving forward including through facilitating tax filing corrections and management of payroll and taxes for Williams Wharf moving forward.

3. Sylvia Valentine, will testify as to her opinion of Robin's impeccable

character, her observation of the trauma she suffered from William Hooper, and ability to provide support to Robin on a daily basis if necessary.

4. Jean Rowe, will testify regarding the business plan to make Williams Wharf Oyster Company viable including: 1) utilizing highly qualified professionals for oyster production; 2) selling oysters including direct to consumer sales; 3) distributing oysters; and 4) having a qualified professional in charge of payroll and payment of taxes.

## Character Letters

Attached with this statement are the following character letters:

1. Boris Klimovitsky, describing his experience working with Robin on a major project for Microsoft; the friendship they have developed; and the high esteem with which he regards Robin Hooper. (Attached as Exhibit A).

2. Mitchell W. Kent, CPA, describing his engagement to prepare Robin's 2020 and 2021 federal and state tax returns. (Attached as Exhibit B).

3. Brooke Bailey, describing the mental and physical abuse she suffered from her marriage to William Hooper. (Attached as Exhibit C).

## Documents

1. Proof of satisfaction of judgment in Mathews County Circuit Court, *Gyetvay v. Hooper, et. al*, CL22-0104. (Attached as Exhibit D).

2. Indictment US v. Hooper, Jr. 4:20cr18 ecf # 7. (Attached as Exhibit E).

3. Verdict Form US v. Hooper, Jr. 4:20cr18 ecf # 108. (Attached as Exhibit F).

4. Documents related to Robin's good faith belief in the legitimacy of the India Venture. (Attached as Exhibit G).

## Section 3553(a) Factors

Unquestionably, Ms. Robin Hooper has no prior history of any criminal activity of any kind. She has worked hard to obtain a strong professional career in the technology industry. She grew up in a loving family and created a loving family for her daughter from a prior marriage. Had Robin never fallen in love with William Hooper, she never would have been in a position to commit the offenses she takes full responsibility for: that of making misrepresentations to Patricia Gyetvay regarding the India Venture and failing to properly pay employment taxes owed to the IRS.

Nonetheless, Robin Hooper did fall for William Hooper. She fell deeply under his spell of coercion and domestic abuse. By the time William Hooper aka "Billy", asked her to put his oyster business in her name, Robin Hooper did not question it. She never questioned putting bank accounts for the business in her name, nor did she question Billy's requests for startup funds and ultimately invested over $100,000 of her personal funds into Billy's oyster business. Robin believed Billy's explanations just as she believed his demonstrations of capability to formulate a profitable oyster business. Billy Hooper was very charismatic, intelligent and persuasive and he knew how to use his charm to bend people to his will. Robin was no exception.

Billy Hooper's coercion is exemplified by the criminal activity he was convicted of: conspiracy to produce child pornography with the mother of the

pornography subject.[1] Billy Hooper's power of coercion was so extensive as to persuade a mother to take explicit photographs of her minor child. Billy employed his full powers of persuasion on Robin Hooper, controlling every facet of her life including the usage of her name and finances to fulfill his ends.

Despite the trauma she suffered at Billy's hands, Robin openly accepts responsibility for the misrepresentations she made to Patricia Gyetvay just as she accepts responsibility for her failure to ensure the IRS was timely paid the taxes a business in her name withheld from its employees. Billy's coercion – although a major factor – is not an excuse. It is the proximate cause of Robin's aberrational bad decision in an otherwise exemplary and productive life.

Billy Hooper had complete control over Williams Wharf Oyster Company ("WWOC") when tax payments for the first three quarters of 2019 were due. In hindsight, Robin realizes she should have actively ensured those taxes were being paid; but in the moment, tax payments were far from her mind.

After Billy's arrest in November 2019, control of WWOC fell to Robin including tax payment for the final quarter of 2019, which was due January 31, 2020. By this point, Robin's world was falling apart. Not only was Billy arrested, but her parents' health was declining.[2] Robin now had to maintain her professional career, run and deal with the investors in WWOC without any qualifications or experience and provide care for both of her parents with

---

[1] William Hooper was also convicted of production of child pornography and two counts of coercion and enticement of a minor.
[2] Both of Robin's parents have since passed away in 2022.

increasingly failing health over the next few years.

PSR paragraph 10 subparagraph 34 illustrates that even had she tried to pay the final quarter 2019 taxes, the combined funds in WWOC's accounts were insufficient to do so. Instead, Robin Hooper was faced with the difficulty decision of trying to preserve the viability of WWOC, which was withstanding a huge drop in oysters sales from the COVID outbreak, instead of using those funds to repay 2019's pay over taxes.

Notably, Robin put a stop to WWOC's negative cash flow, and has been timely paying its tax obligations ever since. She has enlisted a close friend to ensure all future tax obligations will be timely and properly paid.

Just as Billy controlled WWOC, he was the driving force behind the India Venture. Billy came up with the concept and business plan. Billy had experience working in India as well as India connections. Billy even discussed the India Venture with Patricia Gyetvay's husband separate from any communications between Robin and Ms. Gyetvay. Notably, the India Venture was not a scheme to deprive investors of their money. It was a legitimate opportunity that very well might have worked had Billy - the genesis and driver of the India Venture – not been arrested.

Nonetheless, Robin made the communications with Gyetvay. She did so believing that Gyetvay's investment would be rewarded just as Robin believed the

investors in WWOC would be rewarded.[3] Even with her belief, Robin recognizes she still owed a duty to communicate the true situation to Gyetvay and she should have ensured that her communications met that duty. Unfortunately, she failed to do so.

After Billy's arrest, Ms. Gyetvay pursued a civil action against Robin for the funds she invested in the India Venture. The parties reached a settlement well before Robin learned the U.S. Attorney's Office was contemplating bringing criminal charges against her, and she had already repaid Gyetvay more than her full investment of $150,000 out of her personal assets – also prior to indication of any criminal indictment.[4]

Robin breached her duty to her friend and readily admits her wrongdoing through those misrepresentations. She also readily paid her friend back, and is actively taking steps to prevent any possibility of a future occurrence.

A sentence of three years of probation, or 12 months of home confinement followed by three years of supervised release, adequately deters Robin from any future criminal conduct, protects the public from further crime, and enables Robin to continue her professional career so that she can provide complete restitution to the IRS, and strive to help all WWOC investors see a return on their investment.

Counsel for Defendant was unable to locate any examples of sentencing

---

[3] At the time Patricia Gyetvay invested in the India Venture she was an investor in WWOC, which she currently retains her investment interest in..

[4] The approximate $32,000 referenced in paragraph 10 subparagraph 42 of the PSR was remaining attorney's fees, court costs and interests from the settlement.

from this Court for convictions under 26 U.S.C. § 7202. The sentence requested by Defendant would be consistent with convictions involving similar financial loss, including:

- *United States v Anderson*, No. 3:15cr199 (E.D. Va. July 14, 2016) which did not impose a prison sentence on a fraud conviction with losses exceeding $115,000 when the guidelines recommended 21-27 months;

- *United States v. Williams-Sweeny*, No. 2:19cr18 (E.D. Va. July 15, 2019) which did not impose prison on a fraud conviction with loss of over $100,000; and

- *United States v. Rhoden*, No. 4:20cr42 (E.D. Va. March 10, 2021) where this Court gave the defendant 10 months of home detention and 3 years of probation for stealing $60,816.50 from the Social Security Administration.

## <u>Conclusion</u>

For the above stated reasons, Ms. Hooper contends that a sentence within the advisory guideline range is greater than necessary to meet the goals of 18 U.S.C. § 3553 and that the guidelines, while perhaps technically correct, overstate the seriousness of her offense. Ms. Hooper is not a danger to society and she has a very low risk of recidivism. She continues to work in her professional career. She is responsible emotionally for her family's wellbeing. A lengthy prison sentence will only serve to ruin Ms. Hooper's career, further damage her family's reputation and adversely affect an oyster business hanging on by the threads. Ms. Hooper

8

does not dismiss or take lightly the seriousness of her conduct in this case, yet her defense implores this Court to consider she had not caused any permanent damage to any victim. Ms. Hooper had already recompensated Ms. Gyetvay above and beyond her $150,000 investment before she had any inkling that criminal charges would be forthcoming, and she has fully repaid her as of today. Ms. Hooper is well on her way to providing full restitution to the IRS.

Ms. Hooper requests that the Court fashion a sentence substantially below the advisory sentencing guidelines in the form of probation instead of any period of incarceration. Such a sentence will punish the Defendant and promote her respect for the law, but also allow her to continue to work to repay owed funds, trying to salvage the investors of WWOC and to provide help to her family members including medical care for her brother.

DATED: February 1, 2023                          Respectfully submitted,

By: /s/ Matthew James Weinberg
                                                              Counsel

Matthew J. Weinberg, Esquire (VSB# 88664)
Thomas E. Snyder (VSB# 17623)
INMAN & STRICKLER, P.L.C.
575 Lynnhaven Parkway, Suite 200
Virginia Beach, Virginia 23452
Telephone: (757) 486-7055
Facsimile: (757) 431-0410
Email: mweinberg@inmanstrickler.com
Email: tsnyder@inmanstrickler.com

*Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 1st day of February, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to all counsel of record.

By: <u>/s/ Matthew James Weinberg</u>
Matthew J. Weinberg, Esquire (VSB# 88664)
Thomas E. Snyder  (VSB# 17623)
INMAN & STRICKLER, P.L.C.
575 Lynnhaven Parkway, Suite 200
Virginia Beach, Virginia 23452
Telephone:  (757) 486-7055
Facsimile:  (757) 431-0410
Email: <u>mweinberg@inmanstrickler.com</u>
Email: <u>tsnyder@inmanstrickler.com</u>

*Counsel for Defendant*